The argued case is United States v. Maldonado and counsel is ready to proceed. Go ahead. Good morning, your honors. May it please the court, Ashok Chandran from the Federal Defenders here on behalf of Michael Maldonado. Mr. Maldonado received a 15-month sentence to run consecutive to an undischarged 7-month term for walking out of a halfway house to spend Thanksgiving with his family and contacting the marshals to self-surrender just a few weeks later without any new allegations of criminal conduct or violations. It was about 8 weeks later, right? It was between 7 and 8 weeks, yes, your honor. But in sentencing Mr. Maldonado, the district court used a guidelines range and ultimately chose a sentence that was driven primarily by Mr. Maldonado's criminal history. And most of that criminal history stemmed from Mr. Maldonado was a teenager into his early 20s. Mr. Chandran, can I just ask you to take a step back? I just want to talk about the standard review for a minute because there was a dispute about that in the papers. The 5H1.1 policy statement was never raised in the written submissions, right? That's correct, your honor. 5H1.1. And it wasn't raised at the sentencing itself? That's also correct, your honor. 5H1.1 wasn't specifically mentioned. And the district court specifically asked whether there should be a – whether there should be a 5H1.1, which is the focus of that policy statement, right? It asked about the departures, your honor. I would just say that the 5H1.1 – And the answer was no, right? Well, with one fashion, that the 5H1.1 policy statement refers to both departures and variances on the basis of youthfulness. So – I understand that. But to the extent that somehow it suggested that the district court should have been referencing 5H1.1 sua sponte rather than just considering under the 3553A factors, isn't that really – and that would also be under the plain error as well, though, because when the district court gave her reasons, nobody stood up and said, your honor, you didn't address the issue of the age of the prior convictions. To avoid – to properly preserve it, there would have to have been an objection for her failure, either under 5H1.1 or under the 3553A factors to consider the issue of age, right? I don't think Hogan-Hernandez requires that much, your honor. So under Hogan-Hernandez, all that's required is that a party inform the district court of the action it wishes the court to take and the basis for that decision. So here, Mr. Maldonado specifically requested a downwards variance from the guidelines range to a sentence of time served. And as one of the bases for that downwards variance, trial counsel cited the fact that Mr. Maldonado's criminal history was significantly informed by teenage and early 20s criminal convictions. Yeah, so that's right. So can I just ask this question? So the sentencing here happens in June 2025, right? That's correct. And in November 2025, the amendment goes into effect that deletes 5H1.1 from the guidelines manual along with all of the other provisions about downward departures based on offense characteristics. And the reason why that was deleted is because the Sentencing Commission realized that all of those policy statements about departures was a vestige of when the guidelines were mandatory and all of the work that that was intended to accomplish was now being done by requests for downward variances under the 3553A factors, right? That's right. So the Sentencing Commission decided it was duplicative to have 5H1.1 plus the possibility of a downward variance. So at the time that this happened, isn't it true that it was duplicative? So you requested a downward variance based on age. The District Court considered whether to do a downward variance based on age. And that is the same analysis that 5H1.1 requires. So what would be different about considering the possibility of a downward departure versus a downward variance based on the same consideration? Well, I think, Your Honor, in Pepper, the Supreme Court said where the Sentencing Commission has promulgated a specific policy statement on a subject, even if that subject might be the proper consideration of the 3553A factors more broadly about the history and circumstances of a particular person, where the Sentencing Commission chose to enact a policy statement, that's due respectful consideration because that is the result of empirical nationwide study. So even though the policy statement was substantial. Right. It's due respectful consideration. I mean, there's two things. One is we say that you have to have a correct calculation of the guidelines. But here we're not talking about the guidelines range. The guidelines range was correctly calculated. The question is whether you should not apply the guidelines range because of the offense characteristics of the age, right? That's correct, Your Honor. And that's precisely what the policy statement did provide for it, whether it was downward departure or variance. So the analysis that the policy statement was saying the district court should do is to consider whether you should depart downward from the guidelines range. Or vary downward, Your Honor. Or vary downward because of age. The district court did consider whether to vary downward based on age. Doesn't that sort of seem ridiculous to say, well, it didn't consider a downward departure when, like, that's the same analysis? Well, I would disagree, Your Honor, that the district court actually considered Mr. Maldonado's age at the time of those prior offenses. But you just said that what you said to the district court is we would like a downward variance because the offenses were committed when he was a teenager. And the district court conducted no further inquiry into whether Mr. Maldonado's Well, it did, right? It said Mr. Maldonado has a significant criminal history. It's serious, varied, and lengthy. And the lengthy sentences of imprisonment have not deterred him. The district court obviously thought that this was not something that was reflected in his youthful character that doesn't reflect his character today. The district court thought that there was a continuous pattern of conduct, right? Right, Your Honor. And that is the reason why you would decide not to depart or vary downward because of the age at which the prior offenses were considered. It could be a permissible one, Your Honor. But I would submit that Delgado requires more right there. That this court had no doubt that the sentencing judge did, in fact, know the age of the defendant. Delgado was a case that dealt with an offense that was committed as a juvenile and a life sentence was imposed. In that case, we said that in order to comply with Miller, the court has to address the age issue before imposing the life sentence. That does not mean that every time in a sentencing that a defendant makes reference to age as a mitigating factor, that if the district court fails to address it in giving its reasons, that that's some type of procedural error. That would completely overturn our precedent that says that a district court is not required to consider every specific, to not address every specific argument, right? We've said that over and over again. A district court is not required to address every specific argument made by defense counsel and will presume that they considered it unless there's an indication otherwise. Isn't that a precedent? That's correct, Your Honor. Could I respond to that in two ways? First, with respect to whether Delgado applies to this case? And second, with the precedent about presuming the district court considers the arguments? So first, with respect to whether Delgado applies here, the Delgado rule was constitutional because of the life sentence imposed. Miller stands for the proposition that a life sentence can't be imposed on a juvenile without the individualized consideration. But in doing so, it relies on the emerging psychological consensus about juvenile criminality and whether it reflects full culpability, which is what this Court recognized in the State. Is it your position that if a district court fails, if a defense lawyer raises age as part of their mitigating factors, and the district court fails to address the age issue, whether it relate to the age at the time of the offense or the age at the time of a prior conviction, it commits a procedural error? Is that your position? I think given the policy statement on age that was in effect at the time of this sentencing, the district court was required to consider. And I'm not saying that the court consideration had to look a particular way or reach a particular outcome. Well, we know they consider it because it specifically told the government at page 85 of the appendix, before I get to defense counsel, do you want to speak any more to the argument about criminal history that Ms. Sherman has made in her submission? And then she's not contesting the criminal history category and making an argument about really the time frame of some of the prior conduct. So there is no doubt the district court understood the argument that was being made and asked the government to respond to it. So this is not an issue of failing to consider it. What you're arguing is that she failed to adequately, notwithstanding Judge Menachie's reference to what she said about the criminal history, that that wasn't enough, that she had to more specifically address the argument. But certainly she understood the argument and considered it, right? Well, Your Honor, I actually read the record a little bit differently. That page of the record where the district court engages in that colloquy with the government. The court is asking about the remoteness of the convictions, not about Mr. Maldonado's age at the time he committed them. So the argument that was being ---- That was the focus of counsel below also, right? I think counsel raised both issues. Counsel raised the remoteness of the convictions as well as the fact that they at least two of the convictions occurred when Mr. Maldonado was a teenager and three before the age of full developmental maturity. Right. So the same thing submission says not only that it was a long time ago, 15 years, it says also that he was a teenager when it was at the time of the offenses, right? That's correct, Your Honor. So the submission says youthfulness as well as remoteness. That's correct, Your Honor. The argument against having a downward variance or departure based on youthfulness or remoteness is the same. It's that this was not something that was characteristic only of the person's youth and impulsiveness. Actually, he's continued the criminal conduct into adulthood. And that's the same argument against a downward variance based on remoteness. It's not simply, you know, his character at time one, but he continued it, right? Well, I think ---- That's what the government argued in response. And that seems to be the argument with which the district court agreed, right? Well ---- The district court considered that argument. I think they're related inquiries, but slightly different, right? The remoteness inquiry asks whether there's been rehabilitation since the time of those past offenses. But youthfulness also looks at whether at the time the offense was committed, there was evidence of full adult culpability or more of the reckless impulsivity of adolescence. Yes, that's right. But the argument, you know, on the other side of either the youthfulness or remoteness argument is, well, you can't say that this only reflected youthful impulsivity because he continued the ---- there was a pattern of criminal conduct that continued past his youthful youth, right? That's certainly one of the arguments. But I think it also ---- So if that's the argument that the government made in response, and we think the record reflects that the district court agreed with that argument, what else do you think the district court should have done to consider the youth argument? Well, I think the district court should have probed the circumstances around the youthful convictions more to understand, you know, why and how those offenses were committed. It did none of that inquiry here. It didn't even acknowledge the fact that Mr. Maldonado was a teenager at the time of those past convictions. But it wasn't relying primarily on that to justify the sentence. It was relying upon the ---- it referenced multiple times the parole revocations that he had, you know, including, you know, well after he attained the age of 18 and the fact that it was two months that he didn't ---- it wasn't just to celebrate Thanksgiving that he had scoundred for two months. That was the focus. It wasn't as if she, in justifying the sentence, relied on those prior convictions in some way that would have left a scratch on her head of why she didn't, you know, mention the age of them, right? Well, Your Honor, I do want to talk about the offense. But just in responding to that, I think the district court does say that it views this escape offense as the same as his prior offenses because they're all examples of Mr. Maldonado acting as if the rules don't apply to him. But then shifting to the offense conduct, I think also the fact that it was, you know, seven to eight weeks as opposed to the minimum three days required under the statute can't justify the weight that the district court placed on that factor because Mr. Maldonado received a sentence that was above the average sentence imposed for nationwide ---- for defendants in the same criminal history category and at the same offense level. And in all the comparator cases identified by the government, the conduct was far more severe involving new violations of law, new criminal conduct, or force and violence as part of the escape. None of that was present here. I'm well over my time. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. I'm Brooke Theodora, and I'm an assistant United States attorney in the Eastern District of New York. I represent the government today on appeal, and I represented the government before the district court. The court should affirm the district court's judgment. Maldonado has failed to show that the district court's sentencing procedures were improper or that its bottom-of-the-guideline sentence was unreasonable. With respect to the standard of review that applies in this case just briefly, it is accurate that it is plain error. It is undisputed, as counsel discussed, as Your Honors discussed with counsel earlier, that Maldonado never asked the district court to consider this policy statement. He never asked the district court to downward depart and actually affirmatively said he was not moving to downwardly depart. This is precisely the circumstances in which plain error review applies when counsel remains silent below, depriving the district court of an opportunity to address They did address this, obviously, more generally, even if they didn't reference the policy statement. So why isn't it not plain error review with respect to the more general argument under the 3553A factors, for example? Your Honor, the district court's silence with respect to 5H1.1 and the defendant's silence with respect to 5H1.1 are reviewed under different standards by this. It's silence with respect to considering age as a factor generally, independent of 5H1.1. Why isn't that under a normal deferential standard rather than plain error? Your Honor, the district court — I just want to make sure I understand your question. Is it that — Even if a defense lawyer doesn't reference 5H1.1, they can still argue generally under the 3553A factors that age with respect to the crime or age with respect to a par conviction should be considered, right? And they certainly did that, right? Yes, Your Honor. We agree, and that is undisputed. So why should plain error still apply then? Plain error still applies because counsel needed to expressly cite the policy statement. Well, you're saying plain error applies insofar as there is a claim of error about not expressly discussing the policy statement. But I would think you would say that to the extent that we think the question is whether the district court adequately considered just the issue of age at the time of the prior conduct, you just don't think that there's an error because the district court addressed that. Yes, that is accurate, Your Honor. We do not believe there was error here, plain or otherwise. And so — but again, regardless of whether this court reviews for plain error or for abuse of discretion, there was no error, as I mentioned. At sentencing, the court expressly stated that it had considered all pertinent policy statements, which includes the policy statement at Section 5H1.1, and that it had independently determined that no departures were warranted before it imposed sentence. But even if the district court hadn't said these things, its careful and thorough discussion at sentencing forecloses Maldonado's claim of procedural error. As I believe Judge Bianco referenced earlier, this court presumes absent evidence to the contrary, that a sentencing court has faithfully discharged its obligation to consider the statutory factors, and Maldonado has identified nothing in the record to suggest that the silence as to this particular policy statement should be construed by this court as a failure to consider it. And in fact, everything in the record actually points to the opposite conclusion, that the district court did in fact consider this policy statement on age. It extensively discussed with both parties, as Your Honors noted, Maldonado's age at the time of certain of his prior convictions, which is exactly what is required of this policy statement. And that included, along with the age of prior convictions, it also included extensive discussion with defense counsel regarding whether Maldonado was on a better path today versus when he started committing crimes as a teenager. The record also makes clear that Maldonado's sentence... Well, the opposing counsel says that that's consideration of what he describes as the remoteness argument and not the youth argument. So would there be a separate analysis to consider whether the prior offenses were the product of youthful impulsiveness versus whether the prior offenses were so remote in time that there could be subsequent rehabilitation? Are those two different things? I think it's fair to consider them two different things, and I think the district court considered both. The district court both asked the government to speak about the remoteness of the prior offenses, but it also repeatedly asked defense counsel to speak to the record again. And in response, defense counsel explained at length Maldonado's changes from the time he was 16 and 18 when he started committing crimes, in her view, to today. That came up several times. I believe there's a three-page discussion of it in the transcript from A95 to 98. So I do believe, fulsomely, the court did consider exactly what was required of this policy. I also think the record makes clear that Maldonado's sentence was substantively reasonable. As Your Honors have noted, Maldonado... Before we get to that, one of the arguments is that the explanation was insufficient under Delgado, that there needed to be more of an explanation in addressing that argument. What's your response to that? The explanation was sufficient, Your Honor. I agree. Our position is that Delgado is inapplicable for the reasons Your Honor noted earlier. It relied on Miller. This is a... Mr. Maldonado was not a juvenile offender. He was 35 years old when he committed the escape conduct in this case. Just three years prior to his escape in this case, at age 32, he was arrested on the street with a firearm in his waistband and 14 twists of crack cocaine. If you recall, his first conviction at age 16 was for attempted robbery in which he brandished a firearm, and his second conviction at age 18 was for possession of crack cocaine. So that underscores the district court's reasonable conclusion that the impulsivity, that is, attendance to youth, had not disappeared with Maldonado's age. And so in light of this history, the other four felony convictions... Clearly the district court had done some kind of analysis that Mr. Chandran was suggesting about analyzing whether the earlier offense conduct was characterized by youthful impulsivity. The district court clearly thought that even if it was, the impulsivity had not gone away, right? I agree. That he continued the same type of conduct past the youthful period. I agree, Your Honor. I think the record in this case, that finding, is what the record in this case suggests. And Maldonado has pointed to nothing to contradict that finding. And so in light of this history, the district court's conclusion about this being just one more example of him acting as if the rules did not apply to him was reasonable. And just briefly before I wrap up, there were several other factors that the district court considered beyond Mr. Maldonado's criminal history in determining his sentence. As the court carefully explained at the hearing, its sentence rested on a range of aggravating and mitigating factors beyond criminal history. This included the seriousness of the offense, general deterrence, the need to protect the public, and the need to promote respect for the law. There were several mitigating factors the district court also concluded in coming to its bottom of the guideline sentence, which included his background, his family circumstances, the conditions at the MDC, the changes he's made to his life, his sobriety. And the resulting sentence, given all of that and given the district court's careful analysis, the resulting sentence was well within the bounds of reason. What about the need to avoid nationwide disparities? Your Honor, the nationwide disparities point, I believe the argument was that the average was 14 months and this was 15 months. I don't believe one month above the average is so high to shock the conscious or shows that this was somehow substantively unreasonable. And so unless the court has any further questions, we would request the court affirm the judgment. Thank you. We'll hear rebuttal. Thank you, Your Honor. Just a couple of quick points. First, since we've talked a fair bit about the standard of review, I did want to step back and also note that I think the parties seem in agreement that the standard of review ultimately isn't dispositive here. On page 30 of the government's brief is the only point where they discuss the other plain error factors in a single sentence, so I don't think they've advanced any arguments that if there was error, it wouldn't meet the other prongs of plain error review. Second, on whether the district court's reference to considering any pertinent policy statement as it listed the 3553A factors was sufficient because in Olmeda, this court squarely rejected that proposition. So in Olmeda, the district court made the same kinds of comments that the sentencing court made here, noting that it was sentencing pursuant to the 3553A factors and that its decision of a sentence would be governed by all of the factors listed there. And this court still found that the failure to do any discussion of the relevant policy statement there, which concerned the consecutive versus concurrent sentence issue, showed a failure to consider that policy statement. It's true that just sort of saying I've considered all the policy statements and I've determined there's no departure that's justified wouldn't by itself mean that there couldn't be an error if other parts of the record indicated that the district court had not considered some relevant consideration. But we do say that we do assume the district court discharges obligations unless the record compellingly suggests otherwise. And so here what we have is the district court saying I've considered all the policy statements and I've determined that there's no downward departure that's justified in combination with the district court making the argument that opposing counsel just described, which is I'm not persuaded that this was just something that reflects an earlier time of his life because he's continued culpable similar conduct since then. And that's the kind of analysis that 5H1.1 would require. So why doesn't that mean the record actually indicates that the district court did do the analysis that we would think it would need to do under the policy statement? Well, I'll respond to that with two points, Your Honor. First, I would disagree with my colleague's characterization of the district court's inquiry as about Mr. Maldonado's age at the time of prior convictions. Again, as I was discussing with Judge Bianco, her questions were more reflective of the remoteness argument the trial counsel had advanced. At no point does the district court even acknowledge the fact that Mr. Maldonado was 16 and 18 at the time of the offense, as my colleague referenced. Stepping back, I also think that it's just not... But wouldn't the response to the argument be the same? So the youth point is, well, this is reflective of youthful impulsiveness and now he's more mature, and so it means he's less prone to criminal conduct, right? The argument about remoteness is this is an earlier part of his life and he may have been rehabilitated by this time, and so it doesn't reflect his current character. And the response to either one of those arguments would be if I see a pattern of conduct that continues past the earlier period, it means that actually it does not... It is not remote in time, and I cannot conclude that it does not reflect his current character. So, like, how would the analysis be different? Isn't that the response to either one of the arguments? I have two responses to that, Your Honor. First, more theoretical, and the second more specific to the facts of this case. So the first more theoretical argument is that in considering youthfulness, rehabilitation at a later point is certainly one factor, but I think the court also has to look at sort of youth being particularly susceptible to outside influences and other factors that can drive adolescence into criminality compared to adults. And specifically in this case, I think it's not fair to equate, as my colleague did, an armed robbery conviction from 16 with a 922-G firearm possession without any allegations of use or discharge at a much later point in his life. Those are clearly different offenses in terms of the danger that they pose to the public or other people. So I think on the facts of this case, there was evidence of that. But it makes it different in terms of the risk posed to the public because, you know, it might be that the person is going to mature out of that type of conduct, right? Or is it less subject to, you know, armed robbery convictions by youth that often involve sort of pressure from other people in their lives? That's the kind of inquiry the district could have done. Right. And so if, in fact, the person engages in similar conduct past the period of youth, that would suggest that it's not true in this case that the person's prior criminal conduct reflected youthful impulsiveness as opposed to something that is continuing into adulthood. Yes, sir. If we had another armed robbery conviction, I'd agree with you. But since we don't... So you're saying actually the district was just wrong that actually the conduct continued, right? I think on the record we have here, there's no basis to treat the conduct as the same. The district court could have done further inquiry into the juvenile criminal conduct to make a finding that they were the same. But based on this record, they're just not. Can I just ask when he's scheduled to be released? You put in the letter yesterday indicating that maybe we should wait for this other panel and pet away. But on the BOP website, it didn't indicate what his release date is. Do you know what that is? Yeah. Mr. Maldonado is scheduled for release October 1st of this year, I believe, which is why we moved to expedite this appeal and why I didn't ask this court in that letter to hold the case. I think pet away may bear on the contours of 5H1.1 and what respectful consideration of that policy statement looked like. But given Mr. Maldonado's impending release, I don't... And you said October... October 1st, I believe. Thank you, Your Honors. That is the one argued case this morning. So I will ask the deputy to adjourn the court.